IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EDWARD WEST III, | § | |
| | § | |
| V. | § | A-08-CA-233-JRN |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dept. of Criminal Justice- | § | |
| Correctional Institutions | § | |
| Division | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

To:  THE HONORABLE JAMES R. NOWLIN
     SENIOR UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 9) and Respondent's Answer (Document 12). Petitioner is represented by counsel and has paid the appropriate filing fee. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

**I. STATEMENT OF THE CASE**

**A.    Petitioner's Criminal History**

Petitioner was convicted of aggravated assault in the 22nd Judicial District Court of Hays County, Texas and sentenced to 20 years in prison on February 8, 2001. Petitioner's conviction was affirmed on June 13, 2002, and his petition for discretionary review was refused on November 27,

2002. West v. State, No. 03-01-00309-CR, 2002 WL 1289749 (Tex. App. – Austin 2002, pet. ref'd). The Supreme Court denied Petitioner's petition for writ of certiorari on June 27, 2003. West v. Texas, 539 U.S. 961 (2003).

Petitioner also challenged his conviction in a state application for habeas corpus relief. Petitioner alleges the application was filed on Friday, June 25, 2004. The Federal Express receipt, provided by Petitioner, shows his package was shipped to the Hays County District Clerk on June 25, 2004. However, it was not delivered to the clerk until Monday, June 28, 2004. The state court records indicate that the Hays County Clerk did not file Petitioner's state application until August 27, 2004. Ex parte West, Appl. No. 60,343-01. On March 16, 2005, the state habeas case was remanded to the 22nd Judicial District Court for factual findings. Id. at cover. After several reminders were sent by the Texas Court of Criminal Appeals, the state trial court issued its findings of fact and conclusions of law on May 19, 2008. Id. at Supp. Rec. at 11-13. The findings of fact and conclusions of law were filed on June 5, 2008. Id. On February 4, 2009, the Texas Court of Criminal Appeals denied Petitioner's state application without written order. Id. at cover.

Petitioner filed his federal application for habeas corpus relief on March 28, 2008. The Court stayed the case so that Petitioner could exhaust his state court remedies. The Court lifted the stay after the Texas Court of Criminal Appeals denied Petitioner's state application for habeas corpus relief. This case is now ripe for review.

**B.     Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below:

> Sergeant Martin Espinoza, a supervisor for the Hays County Sheriff's office, received a dispatch to report to the scene of an alleged crime on March 23, 1998. He arrived at Frank Lehman's R.V. and saw Lehman standing outside. He noticed lacerations on his face. Once inside Lehman's trailer, Sergeant Espinoza noticed blood dripping down the inside of the door and front of the trailer. EMS arrived soon after and transported Lehman to the hospital. He told Sergeant Espinoza that West had assaulted him with a baseball bat; he also told an investigator, and the emergency room physician that he had been beaten with a bat. Medical records introduced at trial revealed that Lehman had several lacerations on his face and head and a crushed right eye socket.
>
> West was indicted on two counts. Count I alleged that West had committed the offense of attempted murder. Count II charged West with aggravated assault, which was alleged in the indictment to have been committed "by use of a deadly weapon, to wit: a bat." West pleaded not guilty to both counts. After a jury trial, West was acquitted as to count I and convicted as to count II. The jury also answered in the negative when asked whether West used or exhibited a deadly weapon. The trial court accepted the jury's verdict. West was sentenced to twenty years in prison and a $5,000 fine. West urges that the trial court erred in overruling his motion for instructed verdict, and in upholding an inconsistent jury verdict finding him guilty of aggravated assault, but failing to find the use of a deadly weapon. He further asserts that this discrepancy is equivalent to a finding of legal insufficiency of the evidence based on a material variance. See Gollihar v. State, 46 S.W.3d 243, 246-48 (Tex. Crim. App. 2001).

West, 2002 WL 1289749 at *1.

**C.     Petitioner's Grounds for Relief**

Petitioner raises three grounds for relief: (1) he was denied effective assistance of counsel; (2) the evidence is insufficient to support his conviction; and (3) the indictment in his case was illegally amended.

**D.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

3

## II. DISCUSSION AND ANALYSIS

A. **Statute of Limitations**

Respondent moves to dismiss Petitioner's application as time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for federal habeas proceedings. 28 U.S.C. § 2244(d)(1). The limitations period usually begins to run when the state court judgment becomes final after direct appeal, or the time for seeking such review expires. § 2244(d)(1)(A). Under § 2244(d)(1)(B), the commencement of the one-year limitation period is delayed until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Id. § 2244(d)(1)(B).

In this case Petitioner's conviction became final, at the latest, on June 27, 2003, when his petition for writ of certiorari was denied by the Supreme Court. Petitioner's state application was not filed until August 27, 2004, after the limitations period had expired. However, Petitioner has provided the Court with evidence that he shipped the application via Federal Express to the Hays County District Clerk on June 25, 2004. The Federal Express receipt clearly shows the package was delivered on June 28, 2004, the earliest date the writ application could have been filed.

Once again, the Court is faced with an unexplained delay of the Hays County District Clerk in the filing of a petitioner's state application for habeas corpus relief. The Fifth Circuit Court of Appeals recently held a state court's failure to process a state application constitutes a state-created impediment under § 2244(d)(1)(B) and tolls the AEDPA limitations period until the state court finally files the state habeas petition. Critchley v. Thaler, 586 F.3d 318, 320 (5th Cir. 2009). Specifically, the Fifth Circuit held that the failure of the Hays County Clerk's Office to timely file

4

prisoners' petitions for state post-conviction relief qualifies as a state-created impediment under § 2244(d)(1)(B). Id. at 321. Accordingly, Petitioner is entitled to statutory tolling from June 28, 2004 until August 27, 2004, the date the state application was filed.

Petitioner is also entitled to statutory tolling during the time his state application was pending. 28 U.S.C. § 2244 (d)(2). Accordingly, the limitations period was tolled from August 27, 2004, until the Texas Court of Criminal Appeals denied Petitioner's application on February 4, 2009. Petitioner filed his federal application on March 28, 2008, while his state application was pending. Accordingly, Petitioner's federal application was timely filed, and the Court will consider the merits of Petitioner's claims.

**B.     AEDPA Standard**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct.

1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2).

   1.   Ineffective Assistance of Counsel

In his first ground for relief, Petitioner argues that he was denied effective assistance of counsel. Specifically, Petitioner argues counsel was ineffective for failing to request a jury charge on self-defense. Petitioner notes that during the charge conference, Judge Robison raised the issue of whether counsel would ask for a charge on self defense, and counsel agreed with the prosecuting attorney's argument that Petitioner was not entitled to a self-defense charge since he had not admitted to the allegations.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

Under Texas law, a person is justified in using force against another person when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against

7

the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 1998). Self-defense is a justification for one's actions, which necessarily requires admission that the alleged conduct occurred. Ex parte Nailor, 149 S.W.3d 125, 133 (Tex. Crim. App. 2004); Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (requiring an accused to admit he committed offense as alleged before offering defense of necessity as justification). To be entitled to an instruction on self-defense, an accused first must raise the issue of self-defense by admitting the conduct charged in the indictment and then offer self-defense evidence as justification for that conduct. Nailor, 149 S.W.3d at 132-33; Young, 991 S.W.2d at 839. Thus, a defendant is not entitled to a jury instruction on self-defense if, through his own testimony or the testimony of others, he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both. Nailor, 149 S.W.3d at 134.

On state habeas review, trial counsel provided his affidavit in which he explained his trial strategy. Ex parte West, Appl. No. 60,343-01 at Supp. Rec. at 5-6. Counsel said that it was Petitioner's position that Lehman had lost his balance during the scuffle and fell and hit his head on a doorframe. Id. at 5. This statement is consistent with what counsel argued at trial, namely, that Lehman got drunk, tried to scuffle with Petitioner, and hurt himself when he fell. IV RR 193-94. Counsel noted that the State's expert testified that Lehman's injuries were consistent with a drunken fall into a doorframe. Id. Counsel also noted that Petitioner's conduct after the fight was inconsistent with self defense. "If he had indeed wielded a bat or other club like object, why had he not come forward with the implement immediately to show he had nothing to hide?" Id. at 6. Counsel concluded that he believed that the self-defense charge was not legally permissible, because

Petitioner never admitted he used force of any kind. Id. In addition, counsel stated self-defense was inconsistent with the defensive theory of accidental fall and injury. Id.

Petitioner has failed to show counsel was deficient in failing to request a jury charge on self-defense. Moreover, had the jury been given a self-defense charge, there is no reasonable probability that the verdict would have been any different. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

2. Inconsistent Verdict

In his next ground for relief, Petitioner argues the verdict was in fatal variance with the indictment. Petitioner explains the jury found in the punishment phase of trial that Petitioner did not "use or exhibit a deadly weapon, to wit: a bat" during the commission of aggravated assault. However, during the guilt/innocence phase of trial, the jury found him guilty of the offense of Aggravated Assault, as alleged in Count II of the indictment, which in turn, had alleged that Petitioner caused serious bodily injuries by "striking Frank Lehman in the head with a bat." Petitioner argues that the failure to find the use or exhibition of the bat "negates any finding beyond a reasonable doubt" that Lehman sustained serious bodily injury.

Petitioner raised this same issue on direct appeal. The Third Court of Appeals thoroughly addressed Petitioner's claim. The court noted that a consistent verdict is not necessary and that a defendant cannot attack his conviction on one count even though that conviction was inconsistent with an acquittal on another count when there was sufficient evidence to support the finding of guilt.

9

West v. State, No. 03-01-00309-CR, 2002 WL 1289749 (Tex. App. – Austin 2002, pet. ref'd) (citing Dunn v. United States, 284 U.S. 390, 393-94 (1932). The court determined the failure to find a deadly weapon does not have to be considered to support or refute Petitioner's guilty verdict. West, 2002 WL 1289749 at *3. In analyzing the sufficiency of the evidence presented at trial the court explained:

> The jury's verdict reflects that they believed Lehman's testimony that West assaulted him with a bat. Given the damage to his face and scalp, coupled with the blood splatterings found by Sergeant Espinoza and investigators in his trailer, a reasonable trier of fact could conclude that a deadly weapon, such as a bat, was used. Moreover, the fracture of Lehman's right eye socket, for which Lehman had to undergo surgery, further supports the conclusion that a heavy, blunt object such as a bat was used in the assault. Indeed, Dr. Whisenant, the emergency room physician who treated Lehman, testified that an injury such as the one suffered by Lehman was typically caused by the force of a blunt object. Given the evidence as a whole, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 324; Chambers v. State, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993).
>
> West argues that the failure of the jury to find the use or exhibit of a deadly weapon created a material or fatal variance between the indictment and the proof offered at trial. See Gollihar, 46 S.W.3d at 246-47. A variance occurs where the evidence introduced by the State fails to prove the offense alleged in the indictment; that is, a discrepancy exists between the allegations in the charging instrument and the proof at trial. Id. at 246. In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that differs from the allegations in the charging instrument. Id. Thus, the evidence may be legally insufficient to sustain the conviction as alleged. Id. at 246-47. Here, the State's proof was consistent with the offense as alleged in the indictment. As the proof offered at trial was legally sufficient to establish the charge of aggravated assault as alleged in the indictment, there was no variance. Moreover, because the evidence is sufficient to sustain the guilty verdict alone, this Court does not have to consider the apparently inconsistent failure to find use of a deadly weapon, according to the Dunn rule.

As stated above, the jury in this case found Petitioner guilty of aggravated assault but did not find that Petitioner used or exhibited a deadly weapon during the commission of the offense. The

standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996).

Under Texas law, a person commits an assault by intentionally, knowingly, or recklessly causing bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West 1998). An assault becomes aggravated when a person uses or exhibits a deadly weapon during its commission. Id. at § 22.02(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id. at § 1.07(a)(17)(B). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. at §1.07(a)(46). Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. As explained by the court of appeals, the evidence in this case was sufficient to support Petitioner's conviction of aggravated assault with a deadly weapon.

The state court's decision that it does not have to consider the apparently inconsistent failure to find use of a deadly weapon is also reasonable. See Golphin v. Thaler, No. EP-08-CV-236-KC, 2009 WL 4728002 (W.D. Tex. 2009) (holding the state court's decision was not unreasonable where

the jury did not find that the petitioner used or exhibited a deadly weapon but found the petitioner guilty of aggravated assault). "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" United States v. Powell, 469 U.S. 57, 65-65 105 S. Ct. 471 (1984) (quoting Dunn, 284 U.S. at 393)). The Supreme Court explained:

> Inconsistent verdicts . . . present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. . . . [N]othing in the Constitution would require such a protection. . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest.

Id. at 65; see also United States v. Agofsky, 516 F.3d 280, 283 (5th Cir.), cert. denied, Agofsky v. United States, ---U.S. ----, 129 S. Ct. 64 (2008) ("The Supreme Court held that consistency in verdicts is not necessary, writing that it 'is possible' that 'the verdict may have been the result of compromise, or of a mistake on the part of the jury. . . . But verdicts cannot be upset by speculation or inquiry into such matters."). Accordingly, Petitioner has not demonstrated that the state court's decision rejecting his argument was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. Thus, he is not entitled to habeas corpus relief.

3. Amended Indictment

In his final ground for relief, Petitioner argues the trial court erred in allowing the State to amend the indictment. Petitioner admits the State filed its motion to amend the indictment on August 14, 2000, although the court did not grant the motion until February 5, 2001, the day of trial.

12

The amendment changed the date of the offense from March 3, 1998, to March 23, 1998. Petitioner asserts he was entitled to 10 days to prepare and respond to the amendment pursuant to Article 28.10 of the Texas Code of Criminal Procedure. Texas law establishes that "After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences." TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (West 2000). The only relief from amendments to the indictment is that a petitioner is entitled to a ten-day period to respond to the amendment. See id.

Petitioner's claim that the trial court amended the indictment in violation of state procedural requirements does not raise an issue of federal constitutional dimension. The amendment of a state indictment is governed by a Texas procedural rule. TEX. CODE CRIM. PROC. art. 28.10(a). Because "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct errors of constitutional dimensions," the failure of a state court to comply with a state procedural rule presents a question of state law only. Smith v. Phillips, 455 U.S. 209, 221, 102 S. Ct. 940 (1982). For that reason, this Court ordinarily will not review questions of state criminal procedure. Moreno v. Estelle, 717 F.2d 171, 179 (5th Cir. 1983). A question of constitutional dimension arises only where a violation of state procedure amounts to a violation of due process that renders the trial as a whole fundamentally unfair. Sawyer v. Butler, 848 F.2d 582, 594-95 (5th Cir. 1988). Petitioner shows no such due process violation here.

### III. RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of February, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE